**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02450-WJM

CHERIE M. BARKER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER**

This matter is before the Court on Plaintiff Cherie M. Barker's appeal from the Final Decision of Defendant Michael J. Astrue, the Commissioner of Social Security ("the Commissioner"), denying Ms. Barker's application for disability insurance benefits. Ms. Barker filed an Opening Brief (ECF No. 13), the Commissioner filed a Response (ECF No. 16), and Ms. Barker filed a Reply (ECF No. 17). The Commissioner has also filed the administrative record with the Court. (ECF No. 9.) On April 11, 2012, this action was reassigned to the undersigned. (ECF No. 18.) After carefully analyzing the briefs and the administrative record, the Court VACATES the Commissioner's Final Decision and REMANDS for further proceedings consistent with this Order.

### I. JURISDICTION

The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

### II. BACKGROUND

Ms. Barker was born in 1969. (ECF No. 9, at 100.) Ms. Barker's medical records

indicate that she has been diagnosed since 2007 with a number of medical conditions, including post-traumatic stress disorder, major depressive disorder, panic disorder with agoraphobia, dissociative disorder, polysubstance abuse in full remission, and alcohol abuse in partial remission. (*Id.* at 222-229, 233-250, 882-906.) Ms. Barker alleges a disability onset date of November 1, 2007. (*Id.* at 100.) Ms. Barker has worked in the past as an administrative assistant, a customer service representative, a front desk clerk, a reservation clerk, and a reservations manager. (*Id.* at 45.)

Ms. Barker's application for disability insurance benefits was denied (*id.* at 50-52), and she requested a hearing before an administrative law judge (*id.* at 55-56). Administrative Law Judge William Musseman ("the ALJ") presided over Ms. Barker's hearing on September 24, 2009. (*Id.* at 25-48.) Ms. Barker was represented by counsel at the hearing, and Ms. Barker and vocational expert Nora Dunn testified at the hearing. (*Id.*)

On February 2, 2010, the ALJ issued his decision (*id.* at 10-20), concluding that Ms. Barker "was not under a disability, as defined in the Social Security Act, at any time from November 1, 2007, the alleged onset date, through September 30, 2009, the date last insured . . ." (*id.* at 19).[1] The ALJ made the following findings of fact and conclusions of law (in line with the governing five-part test to determine disability, described below). First, the ALJ ruled that Ms. Barker had not engaged in any substantial gainful activity between November 1, 2007 and September 30, 2009. (*Id.* at

---

[1] The ALJ found, and both parties appear to agree, that Ms. Barker last met the insured status requirements under the Social Security Act on September 30, 2009, making November 1, 2007 through September 30, 2009 the relevant time period to consider.

12.) Second, the ALJ held that Ms. Barker's severe impairments were anxiety, an affective disorder, and obesity. (*Id.* at 12-13.) Third, the ALJ held that Ms. Barker's severe impairments do not meet or equal the established listing of impairments under the governing regulations. (*Id.* at 13.) The ALJ then analyzed Ms. Barker's residual functional capacity (*id.* at 13-18), concluding that Ms. Barker

> had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she should avoid unprotected heights; should not climb ladders, ropes, or scaffolds; and should not deal with the general public, or perform tasks with a SVP of greater than 3, or with GED levels of more than 1, 2, or 3. The claimant should only occasionally interact with co-workers, and should have minimal supervision on the job.

(*Id.* at 13-14.) The ALJ then ruled that Ms. Barker was unable to perform any past relevant work. (*Id.* at 18.) However, considering the residual functional capacity assessment described above, along with Ms. Barker's age, education, and work experience, the ALJ determined (based on the vocational expert's testimony) that there are jobs that exist in significant numbers in the national economy that Ms. Barker can perform (such as floor waxer, hand packer, and window cleaner). (*Id.* at 18-19.)

Ms. Barker appealed the ALJ's decision (*id.* at 99), and the Appeals Council denied her appeal (*id.* at 1-6). Ms. Barker appealed that decision by initiating this appeal on September 16, 2011. (ECF No. 1.)

### III. ANALYSIS

**A.    Standard of Review**

A district court's review of the Commissioner's determination that a claimant is not disabled within the meaning of the Social Security Act is limited. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992). The review is limited

to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence.  *Id.* at 1497-98; *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196.  It requires more than a scintilla of evidence but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal."). Although a reviewing court should meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

**B.     Evaluation of Disability**

The criteria to obtain disability insurance benefits under the Social Security Act are that a claimant meets the insured status requirements, is younger than 65 years of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

There is a five-step sequence for evaluating disability. See 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id.* § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to a fourth step. *Id.* § 404.1520(e). At the fourth step, the claimant must show that the "impairment prevents [her] from performing work [she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *see also* 20 C.F.R. § 404.1520(f). If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is not able to perform her previous work, the analysis proceeds to a fifth step. At the fifth step, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity, age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. § 404.1520(g).

**C.     Discussion**

In her briefs, Ms. Barker argues, *inter alia*, that the ALJ's written decision does not indicate that the ALJ properly weighed the medical opinions of three physicians who treated, examined, and/or evaluated Ms. Barker during the relevant time period – Drs. Harazin, Robbins, and Garnand – and in particular the opinions of Ms. Barker's treating physician Dr. Harazin.  The Court agrees, and vacates and remands on that basis.

"An ALJ must evaluate every medical opinion in the record."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  In determining what weight to give any medical opinion, the ALJ must consider factors such as whether the physician personally examined the claimant, whether the physician was a treating physician, the extent to which the physician gave supporting explanations for her opinions, and the extent to which the physician's opinions are consistent with the record as a whole.  *See* 20 C.F.R. § 416.927(d).  "After considering the pertinent factors, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion."  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation marks and brackets omitted).

The ALJ's functional capacity analysis included detailed analysis of the evaluations performed by Dr. Robbins, a psychologist who examined Ms. Barker in April 2008, and Dr. Garnand, a non-examining state agency physician who evaluated Ms. Barker's medical records in July 2008, while providing a more limited analysis of the treatment and opinions expressed by Dr. Harazin, who regularly treated Ms. Barker between February 2006 and June 2009.  (ECF No. 9, at 14-16.)  The ALJ then

proceeded to arrive at his ultimate conclusions regarding each physician's opinions. As to Dr. Garnand, the ALJ stated that he "agrees" with Dr. Garnard and would adopt Dr. Garnand's findings. (*Id.* at 17.) The ALJ then proceeded on to Dr. Robbins, stating that he was giving Dr. Robbins' opinions very little weight, and explaining his reasons therefor. (*Id.* at 17-18.) Finally, in addressing the opinions of Dr. Robbins, the ALJ stated that he "does not agree" with the opinion of Dr. Harazin in Dr. Harazin's August 2009 Mental Residual Functional Capacity Assessment ("Mental RFC"), explaining, "The more significant restrictions [in Dr. Harazin's Mental RFC] are found to be excessive and not consistent with Dr. Harazin's own notes that the claimant is 'doing fine' and 'feeling good,' and having normal mental status exams in late 2008 and 2009." (*Id.* at 18.)

The Court finds this case to be notable regarding the extent to which each of the three physicians treated and/or examined Ms. Barker. Unlike Dr. Robbins, who examined Ms. Barker on one occasion, and Dr. Garnand, who did not personally examine Ms. Barker, Dr. Harazin's treatment records indicate that he saw Ms. Barker approximately *40 times* over a more than three year period. Those treatment records indicate that Ms. Barker's mental and emotional stability improved at times, and deteriorated at times (with one, and possibly two, suicide attempts[2]). Dr. Harazin repeatedly adjusted the dosage on Ms. Barker's medications, including her psychotropic medications. Dr. Harazin's treatment notes do indeed appear to indicate that Ms.

---

[2] As to one of these suicide attempts, the ALJ states, "[notes] from Dr. Harazin from 2008 discuss the overdose, but when she first saw him after that situation, she admitted she did not want to die." (*Id.* at 16.) The Court fails to see how Ms. Barker's admission that she didn't want to die is relevant to a disability determination.

Barker was in a period of improvement during the first half of 2009, with Dr. Harazin's June 30, 2009 treatment notes stating that Ms. Barker was "doing well" and "feel[ing] good." The ALJ appears to have discounted Dr. Barker's residual functional capacity findings and other opinions, made in August 2009, given that they were inconsistent with these recent treatment notes indicating that Ms. Barker was in a period of improvement.[3]

Dr. Harazin's August 2009 evaluation included not only "check box" residual functional capacity assessments, but also the following narrative conclusions:

> Ms. Cherie Barker suffers from severe PTSD which affects every aspect of her life. There are many nights (4-7) in which the [patient] sleeps poorly if at all secondary to symptoms of PTSD. Her mistrust of others causes difficulty in interacting with others. This difficulty can be in the form of severe anxiety when working with others, to rage and aggression. Because of her poor sleep, [the patient] has significant mental confusion which will increase her anger. She also have severe difficulty being reliable, punctual and sustaining effort because of her illness.

(*Id.* at 905.) The Court is struck by how easily the ALJ appears to have discounted these extensive opinions of Dr. Harazin, who provided near-monthly treatment of Ms. Barker over a more than three-year period, based only on Dr. Harazin's most recent (and cursory) progress notes. *See Watkins*, 350 F.3d at 1301 ("[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately

---

[3] Notably, none of the three physicians attempted to reach an ultimate conclusion regarding disability, an issue reserved to the Commissioner. Instead, the physicians opined on Ms. Barker's specific functional capacities, such as the ability to perform activities within a schedule, get along with coworkers, maintain socially appropriate behavior, and respond appropriately to changes in the work setting. Given this, the ALJ's statement that he "does not agree" with Dr. Harazin, rather than assigning a specific weight to the opinion, suggests that the ALJ may have been improperly substituting his own lay judgment for that of Dr. Harazin. *See Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) ("[A]n ALJ cannot substitute [his] lay opinion for that of a medical professional.")

assigns the opinion."); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports . . . .") (quotation marks omitted).

Several considerations lead this Court to vacate and remand. First, Dr. Harazin was not only a treating physician, but a treating physician who saw and treated Ms. Barker on a near monthly basis for over three years, while Dr. Garnand did not even personally examine Ms. Barker.[4] *See Doyle v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations . . . .") (quotation marks omitted); *Morales*, 225 F.3d at 317 ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.") (quotation marks omitted). Second, Dr. Harazin's evaluation in August 2009 was not necessarily based on how Ms. Barker was doing just at that particular time, but instead easily could have been based on Dr. Harazin's broader view of Ms. Barker's condition over his three years of (frequent) treatment of Ms. Barker, and Dr. Harazin's prognosis for Ms. Barker's future based on this long history. *Cf. Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990) ("[A] treating physician

---

[4] While the ALJ briefly addressed the fact that Dr. Garnand did not personally examine Ms. Barker, the Court finds the ALJ's reasoning – as reflected in the ALJ's written decision – lacking in specificity.

may provide a retrospective diagnosis of a claimant's condition."). Third, the ALJ himself was tasked with determining whether, and when, Ms. Barker had or had not been disabled during the entire period of November 1, 2007 through September 30, 2009, not just how Ms. Barker was doing on June 30, 2009 or on the date of the hearing before the ALJ. And finally, if the ALJ was inclined to discount a seemingly thorough Mental RFC Assessment by Dr. Harazin, a treating physician, based only Dr. Harazin's recent, cursory progress notes, in this Court's view the ALJ should without question have re-contacted Dr. Harazin to clarify Dr. Harazin's medical opinions.[5] All of these considerations, particularly considered together, lead this Court to vacate and remand. *See Jensen*, 436 F.3d at 1165 ("The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."); *see also Winfrey*, 92 F.3d at 1019.[6]

---

[5] At the time of the ALJ's decision, 20 C.F.R. § 404.1512(e) required an ALJ to "seek additional evidence or clarification from [a claimant's] medical source when the report from [the] medical source contains a conflict or ambiguity that must be resolved . . . ." The Commissioner has since removed that requirement from section 404.1512, effective March 26, 2012. However, even on remand the ALJ will still have the discretion to conduct such further inquiry with Dr. Harazin. The ALJ will also have such discretion with Dr. Robbins, whose GAF score was not supported with sufficient medical findings in her report.

[6] While the Court is most concerned with the ALJ's weighing of the three medical opinions, the Court also must mention one other point. Part of the ALJ's reasoning in arriving at his RFC assessment was based on the fact that Ms. Barker had "reported an entirely normal range of activities of daily living." (ECF No. 9, at 17.) Specifically, the ALJ pointed to the fact that Ms. Barker "reported awakening around 5:00 a.m., getting her children ready for school, knitting, working puzzles, crocheting, watching television, talking on the telephone, cooking dinner, and cleaning the house on the weekend." (*Id.*) Significantly, however, none of these identified activities require Ms. Barker to leave her house or interact with the public or coworkers, which the record suggests is one of Ms. Barker's primary problems in the workplace. (*See* ECF No. 9, at 28-43, 905.)

Because the Court concludes that remand is appropriate, the Court need not address the other arguments raised by Ms. Barker. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (where the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal). The Court expresses no opinion as to Ms. Barker's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments. The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that the Commissioner's Final Decision is VACATED and the case is REMANDED for further proceedings consistent with this Order.

Dated this 24th day of September, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge